IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| *In re* UPSTART HOLDINGS, INC. SECURITIES LITIGATION. | : : : : : : : : : | Case No. 2:22-cv-02935<br><br>Chief Judge Algenon L. Marbley<br>Magistrate Judge Elizabeth P. Deavers |

**OPINION & ORDER**

This matter comes before this Court on Defendants' Motion for Reconsideration of this Court's September 29, 2023 Opinion and Order denying their Motion to Dismiss. (ECF No. 75). Movants also requests oral argument, to which Plaintiffs are opposed (ECF No. 80), and this Court concludes is unnecessary to resolve the issues at hand. For the following reasons, Defendants' Motion is **DENIED**.

## I. BACKGROUND

This Court previously summarized the allegations giving rise to this litigation and will do so only briefly here. In December 2020, Upstart Holdings, Inc. ("Upstart"), a consumer lending startup completed its initial public offering at $20.00 per share. (ECF No. 45 ¶ 83). In less than a year, its stock rose to a peak of $401.49; early investors, executives, and shareholders reaped immense profits by selling high. (*Id.* ¶¶ 97, 275). But when increased interest rates hampered demand for loans, Upstart's business flagged. By November 2022, its stock had dropped to $19.04 per share, and investors who bought in during the fall of 2021 were left with massive losses. (*See id.* ¶ 305).

Plaintiffs, Universal-Investment-Gesellschaft mbHaft, a German investment firm, Emmanuel Sebag, and Kathy Brooks, now bring a putative securities fraud class action, alleging

1

violations of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§ 77a–78pp, and the regulations promulgated thereunder, against Defendants Upstart; David J. Girouard, co-founder and chief executive officer of Upstart and chair of its board; Sanjay Datta, the chief financial officer of Upstart; Paul Gu, co-founder and Senior Vice President of Product and Data Science of Upstart and a member of its board of directors; Anna Counselman, co-founder and Senior Vice President of People and Operations at Upstart; Robert Schwartz, the Managing Partner of Third Point Ventures and a former member of the Upstart board; and several Defendants associated with an investor, Third Point Ventures LLC.

In February 2023, the Upstart Defendants filed a Motion to Dismiss Plaintiffs' Complaint. This Court considered the Parties' arguments in a 56-page opinion, at the conclusion of which it granted in part and denied in part Defendants' Motion, dismissing all claims against Third Point Defendants. (ECF No. 68 at 56). Now, Defendants move this Court for reconsideration, arguing that this Court committed clear error in concluding that Plaintiffs' alleged a strong inference of scienter with the particularly required in securities fraud lawsuits. Specifically, Defendants argue that this Court fatally erred in deferring consideration of the second *Helwig* factor, part of a nine-factor, non-exhaustive list of considerations "usually relevant to scienter." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001). (ECF No. 75-1 at 7). In Defendants' view, reconsideration is warranted, and Plaintiffs' entire Complaint must be dismissed. (*Id.* at 7-8). Plaintiffs' respond that the scienter inquiry is a holistic one, in which no one *Helwig* factor is dispositive, and this Court's decision should stand. (ECF No. 80 at 9, 16). The Motion is now ripe for review.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration. *Doyle v. Pollit*, No. 2:08-CV-761, 2010 WL 658652, at *1 (S.D. Ohio Feb. 22,

2

2010) (citing *Rodriquez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)). Regardless, "[d]istrict courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of a final judgement." *Id.* Motions for reconsideration serve a limited function and are justified only when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Id.* They are "not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Doyle*, 2010 WL 658652 at *1 (citing *J.P v. Taft*, 2006 WL 689091, at *13 (S.D. Ohio Mar. 15, 2006)). Relief is granted if the previous order presents a clearly erroneous legal or factual issue. *King Lincoln Bronzeville Neighborhood Ass'n v. Blackwell*, 2009 WL 5066912, at *1 (S.D. Ohio Dec. 22, 2009). When seeking "reconsideration based on a clear error of law alone," however, the movant "must show unique circumstances such as a court's total failure to address an issue or a claim," *Morningstar v. Circleville Fire & EMS Dep't*, 2018 WL 2938356, at *2 (S.D. Ohio Jun. 12, 2018) (Marbley, J.), or misapplication of controlling precedent, *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

### III.     LAW & ANALYSIS

As this Court explained in its earlier Order, to survive a motion to dismiss that challenges the viability of claims under § 10(b) of the Securities Exchange Act of 1934, the Private Securities Litigation Reform Act ("PSLRA") requires Plaintiffs to allege a strong inference of scienter, or a "'knowing and deliberate intent to manipulate, deceive, or defraud' or 'recklessness.'" *City of Taylor Gen. Emp. Ret. Sys. v. Astec. Indus.*, Inc., 29 F.4th 802, 812 (6th Cir. 2022) (quoting *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016)). Plaintiffs must do so by "stat[ing]

with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

In passing the PSLRA, Congress's decision to require a "strong" inference, "unequivocally raise[d] the bar for pleading scienter," but Congress did not make clear to what extent. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321-22 (2007). In *Tellabs*, the Supreme Court weighed in, explaining that a "strong inference" of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314; *see also id.* at 324. But Plaintiffs need not show that the inference of scienter is *more* likely than a nonfraudulent inference; "where two equally compelling inferences can be drawn, one demonstrating scienter and the other supporting a nonculpable explanation, *Tellabs* instructs that the complaint should be permitted to move forward." *Frank v. Dana Corp.*, 547 F.3d 564, 571 (6th Cir. 2011) (quoting *Tellabs*, 551 U.S. at 324 n.5; citing *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 59 (1st Cir. 2008)).

Nor did Congress "throw much light on what facts . . . suffice to create [a strong] inference." *Tellabs*, 551 U.S. at 322. Courts in the Sixth Circuit consider the factual allegations in the Complaint holistically to determine whether they give rise to a strong inference of scienter, *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 979 (6th Cir. 2018), and in so doing, generally consider the non-exhaustive list of factors laid out as "usually relevant" to scienter in *Helwig*. Once courts have reviewed the factual allegations, they "take into account plausible opposing inferences and decide whether a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Dougherty*, 905 F.3d at 979 (internal quotation marks and citation omitted). Complaints that fail to allege a strong inference of scienter "shall" be dismissed. 15 U.S.C. § 78u-4(b)(3)(A).

4

The operation of the *Helwig* factors is central to Defendants' Motion for Reconsideration. Defendants argue that this Court erroneously deferred consideration of the second *Helwig* factor—inconsistency between internal reports and public statements—until after discovery. And that had this Court considered it at the pleading stage and given Defendants the benefit of its conclusion that the factor was absent, this Court would have been required to dismiss Plaintiffs' Complaint, because the second factor is "key" and dispositive of the entire scienter inquiry. Defendants also argue that the sixth factor must fall with the second, so this Court's conclusion that facts supporting the sixth factor were alleged in this case must also be reconsidered.[1]

Defendants are correct that the *Helwig* factors apply at the pleading stage, but they are incorrect in asserting that this Court did not consider Plaintiffs' failure to allege inconsistencies between internal reports and public statements. And Defendants are wrong that the second *Helwig* factor is dispositive.

It is beyond peradventure that the *Helwig* factors apply at the pleading stage. *See e.g., Konkol v. Diebold, Inc.*, 590 F.3d 390, 397 (6th Cir. 2009) (applying the *Helwig* factors to a complaint). There is no need to belabor the point.

It is similarly irrefutable that this Court began its analysis of the second factor by writing that "[c]onsideration of this factor is premature at this stage, given that 'Plaintiffs would need discovery to discern the contents of internal reports as compared to external statements.'" (ECF No. 68 at 44 (citing *In re FirstEnergy Corp.*, 2022 WL 681320, at *20 (S.D. Ohio Mar. 7, 2022)

---

[1] Defendants also argue, in a footnote, that this Court "should reconsider the scienter analysis for the Individual Defendants, as many of the remaining scienter factors apply on to some Defendants." (ECF No. 75-1 at 19 n.5). But Plaintiffs are correct that this Court acknowledged that it would proceed "on a group basis," as Upstart had done in its briefing, and would "discuss specific allegations that are unique to a particular defendant." (ECF No. 80 at 13 n.7). This Court's conclusion that there is a strong inference of scienter impliedly includes all Defendants. (*See* ECF No. 68 at 48).

5

(Marbley, J.)). But this sentence does not obliterate the analysis that followed. This Court went on to explain that, at this juncture, the second factor "certainly does not favor Plaintiffs: they have identified no particular documents that contradict the challenged statements." (*Id.*). The Opinion continues, explaining that Plaintiffs' argument regarding the second factor "relies entirely on speculation" because "[i]t assumes that Plaintiffs must have had access to some sort of information about the AI model and about the accumulation of loans." (*Id.*). And, perhaps most significantly, the scienter analysis concluded by weighing the strong inference of actual knowledge against the opposing, non-culpable inference, which it found to be "compelling too, given the lack of divergence between the challenged statements and internal reports." (ECF No. 68 at 48). The second factor's absence was noted, weighed, and indeed, highlighted. (*See id.*). That this Court began its analysis by acknowledging that the strength of the second factor could not be conclusively determined until after discovery does not mean that Defendants did not benefit from the factor's absence at the pleading stage.

Nor is it true, as Defendants argue, that the second *Helwig* factor is so essential that its inapplicability is fatal to Plaintiffs' claims. Following the Supreme Court's endorsement of a holistic approach to evaluating scienter, the Sixth Circuit "eschewed *Helwig*'s checklist approach in favor of *Tellab*'s . . . entirely collective assessment." *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 469 (6th Cir. 2011). Indeed, the Sixth Circuit has made clear that not all *Helwig* factors are relevant in every case, and examples abound of cases in which the Sixth Circuit and district courts alike have simply acknowledged the absence of some of the nine factors as part of the holistic analysis. *See e.g., Diebold*, 590 F.3d at 403-04 ("The investors' complaint fails to allege any of the seven remaining *Helwig* factors."). Here, for example, this Court explained "[t]he fourth, fifth, and eighth factors . . . are inapplicable" but that "[b]ecause the *Helwig* factors are

6

non-exhaustive, the absence of these factors 'does not meaningfully detract from a strong inference of scienter.'" (ECF No. 68 at 46 (quoting *Struogo v. Tivity Health*, 551 F. Supp. 3d 839, 851 (M.D. Tenn. 2021)).

Defendants are correct that several Sixth Circuit opinions characterize the second factor as "key" to the scienter inquiry. *See Dougherty*, 905 F.3d at 981 (citing *City of Monroe Emps. Ret. Sys. v. Bridgestone*, 399 F.3d 651, 688 (6th Cir. 2005). Nowhere do those cases hold, however, that the second factor is required or dispositive. *See also Wilkof v. Caracao Pharmaceutical Laboratories, Ltd.*, 2010 WL 4184465, at *5 (E.D. Mich. Mar. 30, 2012) ("Under the law, no one factor is dispositive of establishing scienter."). Defendants pluck phrases out of context to support their argument, but review of the authorities on which they rely reveals that the law does not support such an extreme interpretation of the second factor's significance. For example, Defendants argue that "the second factor is a proxy for the particularity requirement," and cite to *Diebold* for the proposition that "'[t]he standard from *Tellabs* requires *specific* facts' that the 'reports were known to [d]efendants.'" (ECF No. 75-1 at 14-15 (quoting *Diebold*, 590 F.3d at 398)). But the Sixth Circuit made this comment in the context of a section limited to analyzing whether plaintiffs had pled facts regarding "[d]efendants' access to financial information" with particularity. *See Diebold*, 590 F.3d at 398. This Court does not read this sentence in *Diebold* as a sweeping edict requiring plaintiffs to *always* allege facts in line with the second factor, but simply a reminder of the specificity required when pleading facts to support an inference of scienter.

In a similar vein, Defendants point to cases in which courts concluded there was no strong inference of scienter, and in so doing, noted the absence of the second factor. In Defendants' view, these cases support the view that the second factor is dispositive. Defendants fail to mention, however, that these cases do so in the context of listing many absent factors. *See e.g., Teamsters*

7

*Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 534 (6th Cir. 2023) ("The tenuous application of the second, third, and sixth *Helwig* factors, together with the complete absence of the rest, supports the conclusion that the Fund has not alleged a strong inference of scienter."); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 692 (6th Cir. 2004) (explaining that "[f]ew of these factors emerge in this case" and summarizing the strength, or lack thereof, of each of the *Helwig* factors). In fact, in *Diebold*, the court mentioned the second factor in the process of concluding that no *Helwig* factors were sufficiently alleged. *See also In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 860-61 (S.D. Ohio 2016) (Marbley, J.), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017) (finding that no *Helwig* factors were present). Given the context, the fact that the second factor was absent in those cases is of little persuasive value in this case.

Ultimately, Defendants identify a pattern of correlation in the Sixth Circuit between absence of the second factor and an insufficiently strong inference of scienter. But a pattern is not a holding, and this Court did not commit clear legal error when it concluded that the facts of this case do not align with the pattern. It is not the only court in this Circuit to have done so. *See e.g., In re Miller Energy Resources Sec. Lit.*, 2014 WL 415730, at *20 (E.D. Tenn. Feb. 4, 2014) ("[T]here are no allegations that the public disclosures diverged from internal documents," but "[d]espite these arguments, the Court finds upon review of the entire complaint that a 'reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference.'") (quoting *Tellabs*, 551 U.S. at 314).

Finally, Defendants argue that because the second and sixth *Helwig* factors are similar, this Court erred in concluding that the sixth factor—disregard of the most current factual information—favored Plaintiffs when the second factor did not. (ECF No. 75-1 at 18). But as Plaintiffs point

8

out, the two factors are not one. This Court concluded that "[t]he sixth factor favors Plaintiffs, who have alleged that Girouard and Datta knew that demand for loans was not 'there,' that the accumulation of loans was not purely for R&D purposes, and the loan problem was not 'temporary,' even while making statements to the contrary." (ECF No. 68 at 45). In so finding, this Court pointed to information distinct from the internal reports essential to the second factor. Namely, "the fact that loans continued to accumulate rapidly during the time periods when [certain Defendants] were reassuring investors that there was no issue or that the issue was temporary." (*Id.* at 45). Absent controlling precedent requiring that the second and sixth factors move together, this Court declines to reconsider this reasoned conclusion.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration is **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: August 5, 2024**