**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| *In re* **UPSTART HOLDINGS, INC.** | : | **Case No. 2:22-cv-02935** |
| **SECURITIES LITIGATION.** | : | |
| | : | **Judge Algenon L. Marbley** |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| | : | |
| | : | |

## OPINION & ORDER

This matter comes before this Court on Plaintiffs[1] Motion for Leave to File [Proposed] First Amended Consolidated Complaint (the "PFAC"). (ECF Nos. 130; 135). Former Defendants Daniel S. Loeb, Third Point LLC, Third Point Ventures LLC (all together "Third Point Defendants") filed a Motion to Intervene for the limited purpose of opposing Plaintiffs' motion. (ECF No. 147). Defendant Robert Schwartz joined Third Point Defendants in an opposition to Plaintiffs' motion. (ECF No. 147-3). For the reasons set forth below, Third Point Defendants' Motion (ECF No. 147) is **GRANTED**; and Plaintiffs' Motion (ECF Nos. 130; 135) is **GRANTED**.

## I.     BACKGROUND

### A.  Factual Background

This Court set out the facts in detail in its previous Order resolving the motions to dismiss. (ECF No. 68). This Court restates the facts relevant here.

In December 2020, Upstart Holdings, Inc. ("Upstart"), a consumer lending startup completed its initial public offering at $20.00 per share. (ECF No. 45 ¶ 83). In less than a year,

---

[1] Lead Plaintiff Universal-Investment-Gesellschaft mbHaf ("Universal") and Plaintiffs Kathy Brooks and Kevin Crain (all together, "Plaintiffs").

its stock rose to a peak of $401.49; early investors-— including the investment firm, Third Point LLC ("Third Point")— executives, and shareholders reaped immense profits by selling high. (*Id.* ¶¶ 97, 275). But when increased interest rates hampered demand for loans, Upstart's business flagged. By November 2022, its stock had dropped to $19.04 per share, and investors who bought in during the fall of 2021 were left with massive losses. (*See id.* ¶ 305).

### 1. The Complaint

On December 5, 2022, Plaintiffs filed the Complaint on behalf of themselves and all persons who purchased or otherwise acquired Upstart securities between December 16, 2020, and November 8, 2022. (ECF No. 45 ¶ 59). Plaintiffs allege violations of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§ 77a–78pp, and the regulations promulgated thereunder, against Upstart Defendants[2] and Third Point Defendants. It included three counts: (1) violations of § 10(b) of the Exchange Act and SEC Rule 10b-5 against all defendants; (2) violations of § 20(a) of the Exchange Act against Girouard, Gu, Counselman, Datta, Schwartz, Third Point, and Third Point Ventures; and (3) violations of § 20A of the Exchange Act against Girouard, Gu, Counselman, Third Point, Third Point Ventures, and Loeb. (ECF No. 45).

According to the Complaint, Third Point Defendants were major investors in Upstart's early operations, wielding major influence over Upstart. (ECF No. 45 ¶¶ 6, 316). Third Point Defendants and Schwartz were deeply entangled with Upstart's day-to-day operations. (*Id.* ¶¶ 72, 316, 332). This included Upstart's "organizational development," "go-to-market strategies," "tech

---

[2] Upstart; David J. Girouard, co-founder and chief executive officer ("CEO") of Upstart and chair of its board; Sanjay Datta, the chief financial officer ("CFO") of Upstart; Paul Gu, co-founder and Senior Vice President of Product and Data Science of Upstart and a member of its board of directors; Anna Counselman, co-founder and Senior Vice President of People and Operations at Upstart; and Robert Schwartz, the Managing Partner of Third Point Ventures and a former member of the Upstart board (all together, "Upstart Defendants").

focus," staffing, "talent acquisition," "go-to-market strategies," and "capital markets strategy." (*Id.* ¶¶ 68, 69, 70; 316).

Plaintiffs also alleged Third Point Defendants' structured credit team was "instrumental in evaluating Upstart's loan and securitization products" and were further involved in Upstart's business as a major funder of Upstart loans, providing well over $1 billion in funds from 2017 through 2021. (*Id.* ¶ 316). Plaintiffs further assert that Schwartz and Third Point Ventures have been critical partners, helping Upstart to connect the dots from an early-stage startup to a market leader prepared for success at the next level. (*Id.* ¶¶ 68, 316). Moreover, Schwartz allegedly made materially false and misleading statements in signing Upstart's IPO Form S-1, Upstart's SPO Form S-1, and Upstart's 2020 Form 10-K. (*Id.* ¶ 50).

### 2. Dismissal of Third Point Defendants

Upstart Defendants and Third Point Defendants moved to dismiss. (ECF Nos. 58, 60). On September 29, 2023, this Court granted the motion as to Third Point Defendants and granted in part and denied in part the motion as to Upstart Defendants. (ECF 68 at 56).

This Court found that, with respect to Third Point Defendants' liability under § 10(b) of the Exchange Act and SEC Rule 10b-5, Plaintiffs securities fraud and scheme liability claims failed. For securities fraud, this Court found that Third Point Defendants were not subject to liability for false or misleading statements, which is limited to the "maker" of the false or misleading statement. (ECF No. 68 at 17-20). Instead, Plaintiffs' allegations against Third Point Defendants relied on Schwartz's statements and thus, on Schwartz being classified as a Third Point Defendant. (*Id.* at 18-19). This Court noted that Schwartz's actions as a director of Upstart cannot be conflated with his role as a Third Point Ventures employee—unless he was violating his fiduciary duties to Upstart and acting on behalf of Third Point Ventures while carrying out his

director duties. (*Id*. at 29). The Complaint, however, lacked any allegations that that was the case. Accordingly, this Court categorized Schwartz as an Upstart Defendant and not as a Third Point Defendant and found that none of the Third Point Defendants is adequately alleged to have "made" any of the challenged statements, thus, there was no basis for sustaining a misstatement claim against them. (*Id*. at 17-20).

For scheme liability, this Court found that Plaintiffs' allegations, suggesting only that the Third Point Defendants aided and abetted the deceptive scheme and not that their actions were themselves deceptive, fail to state a claim under Rule 10b-5(a) and (c).

Plaintiffs also brought a claim under § 20(a) of the Exchange Act, for control liability against Third Point Defendants. This Court explained that Plaintiffs have failed to plead allegations giving rise to a "reasonable inference" that the Third Point Defendants possessed "the power to direct or cause the direction of the management and policies of" the Upstart Defendants. (ECF No. 68 at 54). This Court further found that, without a predicate violation, Plaintiffs' Section 20A claim against the Third Point Defendants failed. (*Id*. at 54-56).

This Court granted the Third Point Defendants' Motion to Dismiss (ECF No. 60), resulting in the dismissal of all claims asserted against them, but Schwartz remained in this case as an Upstart Defendant. Although the Opinion and Order did not expressly state whether the dismissal was with prejudice, the motion itself requested dismissal with prejudice and this Court granted that relief in full.

The case continued with the Upstart Defendants with the following case schedule: any motion to amend the pleadings or join additional parties was due December 6, 2024; all expert discovery completed by July 8, 2025;  and merit-based fact discovery completed by February 21, 2025. (ECF No. 79).

On March 27, 2025, this Court certified the following class under subsection 23(b)(3) of

the Federal Rules of Civil Procedure:

> All persons and entities who purchased or otherwise acquired Upstart Holdings,
> Inc. ("Upstart" or the "Company") common stock or exchange-traded Upstart call
> options, or who sold exchange-traded Upstart put options (together, the
> "Securities"), between December 16, 2020, and November 8, 2022, inclusive (the
> "Class Period"). Excluded from the Class are: (i) Defendants; (ii) the officers and
> directors of Upstart at all relevant times; and (iii) members of their immediate
> families and their legal representatives, heirs, successors or assigns, and any entity
> in which Defendants have or had a controlling interest.

(ECF No. 157 at 25).

### 3. The [Proposed] First Amended Consolidated Complaint

On December 6, 2024, Plaintiffs filed a Motion for Leave to File a [Proposed] First

Amended Consolidated Complaint which renames Third Point Defendants in this case and,

characterizes Defendant Schwartz as a "Third Point Defendant" rather than an "Upstart

Defendant." (ECF No. 130). Parties explain that on December 12, 2023, a non-party subpoena was

issued by Plaintiffs to Third Point containing sixteen broad requests for documents and

information. (ECF Nos. 147-3 at 6; 130-1 at 2-4). Plaintiffs also sent separate requests for

production as to Defendant Schwartz. (*Id*.). Plaintiffs allege that the documents that have been

produced demonstrate that Schwartz routinely violated his fiduciary duties to Upstart by disclosing

material nonpublic information ("MNPI") to Third Point Defendants. Plaintiffs thus seek to amend

its complaint to allege additional facts and prosecute their claims against Third Point Defendants.

Third Point Defendants, joined by Defendant Schwartz, oppose the motion. (ECF No. 147-

3).

## II.    LAW AND ANALYSIS

### A.  Motion to Intervene

Third Point Defendants seek permissive intervention under Federal Rule of Civil Procedure 24(b)(1). (ECF No. 147). Under Rule 24(b)(1), a court may allow intervention on a timely motion by a movant who "has a claim or defense that shares with the main action a common question of law or fact." If the motion is timely and there is at least one common question of law or fact, the court considers whether intervention would cause undue delay or prejudice to the original parties, and any other relevant factors. *U.S. v. Michigan*, 424 F. 3d 438, 445 (6th Cir. 2005); *Shy v. Navistar Intern. Corp.*, 291 F. R. D. 128, 138 (S.D. Ohio 2013).

Here, the motion was timely filed in accordance with the Joint Motion and Stipulation to Set Briefing Schedule for Motion to Intervene. (ECF No. 141). Moreover, Third Point Defendants allege at least one common question of law or fact—namely, the potential impact of Plaintiffs' proposed amended complaint on their party status in this case. *Michigan*, 424 F.3d at 445. Additionally, this Court finds no indication that intervention will cause undue delay or prejudice. No party has alleged prejudice, and Plaintiffs did not oppose the motion. (ECF No. 141).

Having considered the Rule 24(b)(1) standard and the relevant factors, this Court finds that permissive intervention is appropriate. As such, intervention by Third Point Defendants is warranted.

Accordingly, the Motion to Intervene (ECF No. 147) is **GRANTED.** This Court will consider Third Point Defendants' opposition to Plaintiffs' Motion for Leave to Amend the Complaint. (ECF No. 147-3).

### B. Motion for Leave to Amend !

#### 1. Legal Standard: Rule 15(a)(2) and Rule 54(b)

Plaintiffs contend that Federal Rule of Civil Procedure 15(a)(2)'s liberal standard applies to their request to amend, while the Third Point Defendants argue that, because they were dismissed from the case with prejudice, the more stringent reconsideration standard under Rule 54(b) governs.

Under Rule 15(a)(2), a court "should freely grant leave to amend when justice so requires." On the other hand, Rule 54(b) does not directly address amendments, but gives district courts authority to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment. *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 952 (6th Cir. 2004). This authority allows district courts "to afford such relief from [interlocutory orders] as justice requires." *Id*. (quoting *Citibank N.A. v. Fed. Deposit Ins. Corp.,* 857 F.Supp. 976, 981 (D.D.C.1994)). A motion may be granted upon showing: "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id*.

There is limited guidance from the Sixth Circuit on whether a motion to amend that seeks to reassert claims against previously dismissed parties should be evaluated under Rule 15(a)(2) or the reconsideration standards of Rule 54(b). Indeed, the Sixth Circuit recognizes a higher standard when a final judgment and an entire case is dismissed. "When a party seeks to amend a complaint after an adverse judgment, it thus must shoulder a heavier burden. Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612,

7

616 (6th Cir. 2010). Notably, the standards for reconsideration under Rules 59 and 60 are similar to that under Rule 54(b).[3] *Id.*

The heightened standard as articulated in *Leisure Caviar*, however, does not apply here. Although the claims against the Third Point Defendants were dismissed with prejudice, the dismissal was not certified as a final judgment under Rule 54(b), and the case continued to proceed against the remaining defendants. As the Sixth Circuit has noted, disposing of fewer than all of the claims or parties involved is not a final judgment. *See, e.g.*, *Rice v. Jones,* No. 23-3373, 2023 WL 5273936, at *1 (6th Cir. June 6, 2023) ("[O]rder was not final because it disposed of fewer than all of the claims or parties involved in this action and did not direct entry of a final, appealable judgment under Federal Rule of Civil Procedure 54(b).").

Third Point Defendants insist Rule 54(b) is nonetheless appropriate and reference various cases, one of which directly addresses the applicability of Rule 54(b) in this context—namely, a motion to amend under Rule 15(a)(2) that seeks to reassert claims against parties previously dismissed. *In re Bisys Sec. Litig.*, 496 F. Supp. 2d 384 (S.D.N.Y. 2007), *aff'd sub nom. Pub. Emps. Ret. Ass'n of New Mexico v. PricewaterhouseCoopers LLP*, 305 F. App'x 742 (2d Cir. 2009). The *In re Bisys* court construed the plaintiffs' Rule 15(a) request as a Rule 54(b) request for reconsideration when the requested amendment included claims against a defendant dismissed with prejudice. There, however, the plaintiffs were given an opportunity to address pleading deficiencies through an amendment, failed to amend their complaint by the court set deadline, indicated that they would not be amending their complaint, and stipulated that all claims against

---

[3] Under Rule 59, courts will find justification to reconsider upon a showing of: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). Similarly, relief is available under Fed. R. Civ. P. 60(b)(1), "when the judge has made a substantive mistake of law or fact in the final judgment or order." *EQMD, Inc. v. Farm Bureau Gen. Ins. Co. of Michigan*, No. 19-13698, 2022 WL 992948, at *1 (E.D. Mich. Mar. 31, 2022).

the defendant were dismissed with prejudice. *Id*. at 385-86. The case continued through the close of discovery and, following settlement with the remaining parties, the plaintiffs requested leave to file an amended complaint reasserting claims against the dismissed defendant. *Id*. at 386. The court applied Rule 54(b), emphasizing that the plaintiffs; request is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id*.

This case, however, is distinguishable. Here, Plaintiffs filed their proposed amendment within the court-ordered deadline and prior to the close of discovery, and they did not stipulate to a dismissal with prejudice. As such, this Court does not find the same degree of finality and strategic relitigating that was present in *In re Bisys*.

Rather, this Court finds that *In re Bisys* "does not establish a rule, much less a controlling one, that all efforts to amend seeking to reassert previously dismissed claims against previously dismissed defendants are subject to analysis under Rule 54(b) standards." *Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc*., 335 F.R.D. 54, 73–75 (M.D. Pa. 2020), *aff'd*, 12 F.4th 337 (3d Cir. 2021). More persuasive is the approach in *Orrstown*, where the court applied the Rule 15 standard to a motion seeking to reassert claims against a defendant previously dismissed with prejudice. The court reasoned that such a motion does not ask the court to reconsider its prior ruling, "but seeks to assert new factual allegations addressing previously identified pleading deficiencies." *Id*.

Other courts have reached similar conclusions. For example, in *In re EpiPen Direct Purchaser Litig*., No. 20CV00827ECTJFD, 2021 WL 4892231, at *2 (D. Minn. Oct. 20, 2021), the court found that the Rule 15(a)(2) standard was appropriate for a motion seeking to reassert claims against previously dismissed defendants. The fact that dismissal of the "defendants was

'with prejudice' does not change the result, . . . because the dismissal was of part of a complaint, not the entirety of an action." The court acknowledged that "[w]hile there are instances where 'with prejudice' functions as final within a case proceeding at the prejudgment phase of litigation, this is not such an instance. *In re EpiPen*, , 2021 WL 4892231, at *2. Instead, finality may attach where a plaintiff simply resubmits "the same case—without making any changes . . . ." *Id.*

Similarly, in *Dixon v. United States*, No. 1:17-CV-1716, 2021 WL 12143094, at *2 (M.D. Pa. July 6, 2021), the court applied a traditional Rule 15 analysis to a motion for leave to amend, reasserting claims previously dismissed with prejudice. The court explained that such an amendment is proper "so long as the party is not effectively asking the court to reconsider its earlier analysis."

This approach is consistent with Sixth Circuit precedent. *See, e.g.*, *Woolbright v. Crews*, No. 18-5131, 2018 WL 7247245, at *4 (6th Cir. July 9, 2018) (finding that "[r]easonable jurists could debate whether" a motion to amend should be construed under the Rule 60(b) reconsideration standards when claims were still pending but finding "[r]easonable jurists would agree that" applying Rule 15 "was a proper construction."). Rule 15 allows amendments that cure previously identified deficiencies. *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015). The Sixth Circuit has emphasized that "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 342 F.3d 634, 644 (6th Cir.2003) (internal citations and quotation marks omitted); *see also Morse v. McWhorter,* 290 F.3d 795, 800 (6th Cir.2002) (securities case) ("[L]eave to amend is particularly appropriate where the complaint does not allege fraud with particularity."). In general, leave should be granted when a plaintiff does not seek to relitigate identical claims based on the same deficient allegations

but rather pleads additional facts addressing the court's prior concerns. Concerns about being reasserted in a case after being dismissed with prejudice is addressed under the Rule 15(a)(2) framework[4], which requires courts to consider undue delay, bad faith, prejudice to the opposing party, and most significantly, futility. *Com. Money Ctr., Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 346 (6th Cir. 2007).

Because Plaintiffs do not ask this Court to revisit its prior ruling, the motion does not trigger the reconsideration standards of Rule 54(b). Rather, to the extent Plaintiffs reassert the same factual issues previously rejected, the law-of-the-case doctrine governs. The doctrine requires that "findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." *Edmonds v. Smith*, 922 F.3d 737, 739–40 (6th Cir. 2019) (quoting *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016)). The doctrine recognizes "that for cases to reach resolution, issues cannot be argued and reargued without end. In other words, the doctrine aims to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit, not to govern the effects that final decisions have on other courts or cases." *Id*. (internal quotations and citations omitted). Thus, any concern of unfair burden or strategic relitigating is adequately addressed under the existing Rule 15 analysis. Hence, there is no justification to impose the more restrictive Rule 54(b) standard absent extraordinary circumstances.

This aligns with the Sixth Circuit's well-established principle that even "if a new claim appears during discovery, liberal amendment of the complaint is provided for by Rule 15(a) . . . ." *J.H. v. Williamson Cnty., Tennessee*, 951 F.3d 709, 722 (6th Cir. 2020) (internal quotation marks omitted). This applies until the summary judgment stage when the liberal pleading standards are

---

[4] As Third Point Defendants state in its opposition, "[b]ut regardless of what standard applies—whether Rule 54(b) or Rule 15—federal law precludes Plaintiffs from re-litigating this case against Third Point." (ECF No. 147-3 at 2).

inapplicable. *Id*. (quoting *Tucker v. Union of Needletrades, Indus. & Textile Emps*., 407 F.3d 784, 788 (6th Cir. 2005)). At the time Plaintiffs moved for leave to amend, the deadline for amendments had not passed, discovery was still ongoing, and Plaintiffs filed their motion in compliance with the court's scheduling order. Unlike the circumstances in *In re Bisys*, there is no indication here of strategic delay, finality, or prejudice that would warrant applying the more stringent reconsideration standards under Rule 54(b).

Accordingly, Plaintiffs' request to amend is governed by the liberal standard of Rule 15(a)(2). Plaintiffs do not seek to relitigate identical claims, but rather to plead additional factual allegations that directly address the deficiencies identified by this Court. That is precisely the purpose Rule 15(a)(2) is designed to serve.

### 2. *Applying Rule 15(a)(2)*

When determining whether to grant a Rule 15(a)(2) motion, courts consider "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Com. Money Ctr., Inc*, 508 F.3d at 346; *Foman v. Davis*, 371 U.S. 178, 182 (1962). This Court addresses the relevant factors in turn.

### a. *Futility*

Courts may deny leave to amend where the proposed amendment would be futile or, in other words, fail to state a claim upon which relief may be granted within the meaning of Rule 12(b)(6). *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017). Although the Third Point Defendants expressly reserved any argument of futility for a later Rule 12(b)(6) motion should they be reasserted into this matter (ECF No. 147-3 at 12), this Court must nonetheless conduct a threshold assessment of whether the proposed amendments would fail for the same reasons that

led to dismissal of the original claims. Such a threshold review is necessary to avoid needless relitigation. While Third Point Defendants do not take a formal position on futility at this stage, they contend that the proposed amended complaint "makes the very same claims" as the claims that this Court found deficient in the Complaint. This Court addresses those arguments here.

Under Rule 12(b)(6) a court tests the sufficiency of the complaint and must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal quotations omitted). "[T]he plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

*i.     The Proposed Amendment Adds Significant New Factual Allegations*

The proposed amendment contains new allegations for claims including: (i) insider trading claims under §10(b) of the 1934 Act (15 U.S.C. §78j(b)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5) against Third Point Defendants and Schwartz; (ii) liability pursuant to the doctrine of respondeat superior against Third Point Defendants based on Schwartz's violations of §10(b) of the 1934 Act and Rule 10b-5; (iii) control person claims against Third Point Defendants related to violations of the 1934 Act; (iv) insider trading claims under §20A of the 1934 Act (15 U.S.C. §78t-1) against Third Point Defendants and Schwartz; and (v) a supplement to the scheme liability claim against Third Point Defendants.

13

The Third Point Defendants argue that the new claims merely restate the same theories previously dismissed by this Court. (ECF No. 147-3 at 11).  Specifically, they contend that Plaintiffs again rely on the notion that, due to Third Point's minority investment and Schwartz's Board seat, Third Point had access to inside knowledge. (ECF No. 147-3 at 9 (citing ECF No. 45, ¶ 6)). As this Court previously held, Schwartz's conduct as a director of Upstart could not be imputed to Third Point in the absence of allegations that he was acting on its behalf in breach of his fiduciary duties to Upstart. (ECF No. 68 at 17-20). Accordingly, this Court categorized Schwartz as an Upstart Defendant and dismissed the claims against the Third Point Defendants for failure to allege sufficiently that they had "made" any of the challenged statements for misstatement liability under Section 10(b)/Rule 10b-5. (*Id*.).

Plaintiffs, however, now go beyond their previously rejected theory. Plaintiffs now allege, in detail, that Schwartz repeatedly violated Upstart's internal policies and his fiduciary obligations by transmitting material nonpublic information ("MNPI") to Third Point to facilitate its trading activity. (ECF No.  130-4 ¶¶ 15, 54, 116-158, 391). The proposed amendment describes Upstart's internal policies on trading and ethics prohibiting the transmission of MNPI. (*Id.* ¶¶  117-28). It then alleges specific  instances of Schwartz disclosing such information to Third Point Defendants. (*Id.* ¶¶ 116-58).   As Plaintiffs have highlighted in the Reply Brief:[5]

> On January 6, 2021, Schwartz emailed Upstart Board meeting materials to Third Point that he described as "confidential reference materials."

> On January 22, 2021, Schwartz emailed to Third Point the "Upstart Confidential 3yr Plan."

> On January 23, 2021, Schwartz emailed to Third Point "a Board book from mid-December (very, very sensitive of course)."

---

[5] Plaintiffs' motion and proposed complaint were filed under seal. (ECF No. 135). Publicly available versions were filed in redacted form. (ECF Nos. 130; 155). This Court reviewed the sealed versions but confines its discussion in this Opinion & Order to information that appears unredacted in the unsealed filings.

On February 1, 2021, Schwartz emailed to Third Point confidential Upstart Board Meeting Materials that included a discussion of a planned acquisition.

On March 9, 2021, Schwartz forwarded to Third Point a monthly update from Upstart's CEO that included MNPI.

On April 10, 2021, Schwartz forwarded to Third Point another monthly email from Upstart's CEO that included MNPI.

On July 11, 2021, Schwartz emailed Third Point and noted "Upstart (confidentially) is poised to blow away expected 2Q (June) numbers (won't announce until early August though)."

On August 10, 2021, Schwartz and Third Point were provided the then current information on Upstart's financial results, including loan equity data which revealed growth in loans on Upstart's balance sheet, while on the same day the public was only informed of Upstart's financial results through June 2021.

On August 20, 23, and 24, 2021, Third Point sold 981,222 shares of Upstart stock.

On November 5, 2021, Schwartz received Upstart's October 2021 results that he forwarded to Third Point on November 12, 2021, containing loan equity data. That data revealed the loans on Upstart's balance sheet had increased significantly between the end of September 2021 and the end of October 2021.

In contrast, on November 9, 2021, the public was told of only the loans held on the balance sheet up to the end of September 2021.

On November 15, 2021, Third Point sold 2,150,000 shares of Upstart stock. This sale occurred before Schwartz's resignation from Upstart's Board that same day— which is a material event—was disclosed to the public. P

Before the next public disclosure of loans on Upstart's balance sheet, Third Point sold and/or divested the vast majority of its remaining shares of Upstart stock.

On September 9, 2021, Schwartz forwarded to Third Point another monthly email from Upstart's CEO that included MNPI.

On November 12, 2021, Schwartz forwarded to Third Point another monthly email from Upstart's CEO that included MNPI.

(ECF No. 155 at 4-6).

These allegations, taken as true, support the reasonable inference that Schwartz acted on

Third Point's behalf, in breach of his fiduciary duties to Upstart, to benefit Third Point's

investment strategy. They materially distinguish the proposed amendment from the original complaint and directly address the prior deficiencies identified by this Court.

*ii.* *The Proposed Amendment Cures Prior Deficiencies*

Accordingly, this Court finds the proposed amendment would not ultimately fail for the same reasons that original claims were dismissed at the Rule 12(b)(6) stage. Plaintiffs have introduced new factual allegations that plausibly support the inference that Schwartz was acting on behalf of the Third Point Defendants in breach of his fiduciary duties to Upstart by repeatedly disclosing material nonpublic information. These new allegations cure the deficiencies previously identified and advance claims that are legally and factually distinct from those previously dismissed.

Although the Third Point Defendants may challenge the sufficiency of these claims in a renewed Rule 12(b)(6) motion, at this stage this Court finds that the proposed amendment, on its face, is not futile. Courts have emphasized that a proposed amendment need only clear the "low bar" of plausibility at this stage. *Short v. Gallia Cnty. Bd. of Commissioners*, No. 2:22-CV-3465, 2023 WL 4348841, at *3 (S.D. Ohio July 5, 2023) ("[o]n its face, the proposed amendment is not futile, and it therefore clears the low bar of evaluation at this stage"). While this standard is used by magistrate judges declining to reach the merits of proposed amendments, this Court finds the reasoning instructive: "it is the better exercise of discretion to permit the amendment and allow Defendants to address the sufficiency of the pleadings in a dispositive motion before the District Judge." *Id*. This is particularly true where, as here, briefing on futility is limited or deferred. *See Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 705 (E.D. Mich. 2020) ("Courts are not responsible for *sua sponte* raising and resolving legal questions not sufficiently briefed by the parties.").

Accordingly, this factor favors granting Plaintiffs' motion.

16

### b.  Undue Delay and Prejudice

Whether delay has led to undue prejudice to the opposing party also influences a court's decision. *Com. Money Ctr., Inc,* 508 F.3d at 346. Delay alone is not a reason to deny a motion to amend, but allowing an amendment after the close of discovery is assumed to prejudice the defense. *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

Here, Plaintiffs filed the motion to amend before the deadline to amend pleadings and prior to the close of discovery, as set forth in the Court's scheduling order. Additionally, the parties explained that, since Third Point Defendants were dismissed from this case, both Upstart and Third Point have produced documents. (ECF Nos. 130-1 at 3; 147-3 at 1). Third Point Defendants assert that they were only informed one week before the scheduled deadline to amend pleadings and that "Plaintiffs underhandedly insisted that the discovery they sought was relevant to the 'surviving claims.'" (ECF No. 147-3 at 1). Third Point Defendants, however, provide no support to suggest Plaintiffs' actions were unduly delayed seeking an amendment. Rather, Plaintiffs continued to pursue the claims in this case and upon newly produced discovery, found evidence that was not available to Plaintiffs at the time the Complaint was filed, and timely moved to amend its complaint. As such, Plaintiffs' timing weighs against a finding of undue delay. *See Dyer v. Wiregrass Hospice, L.L.C.*, 532 F. Supp. 2d 933, 935 (M.D. Tenn. 2008) (finding "there is no reason to conclude that the motion to amend was unduly delayed" when the motion was timely filed).

Additionally, the Court finds no undue prejudice. Third Point Defendants argue undue prejudice is caused by having to defend itself after being dismissed from the case sixteen months before the motion was filed. They note the risk of being added back to the case after the close of fact discovery and class certification briefing. (147-3 at 15). Indeed, this Court granted the motion

17

to certify class after Third Point was dismissed. (ECF No. 157). Even so, courts have held that the need for additional motion practice or trial preparation does not, by itself, constitute undue prejudice. *Morse v. McWhorter*, 290 F.3d 795, 801 (6th Cir. 2002) ("We recognize Columbia will be inconvenienced by another round of motion practice, but given the magistrate's recommendation and the competing interest of the proposed class, such inconvenience does not rise to the level of prejudice that would warrant denial of leave to amend."). Provided that Third Point Defendants believe its addition to this case may impact this Court's class certification decision, it may file a motion to decertify the class. *See* Fed. R. Civ. P. 23(a); *Miri v. Clinton*, 300 F.R.D. 319, 320–21 (E.D. Mich. 2014) ("Rule 23(c)(1)(C) states that '[a]n order that grants or denies class certification may be altered or amended before final judgment.'").

Moreover, any discovery concerns lack merit as additional depositions, with the exception of Schwartz, were stayed by agreement of the parties and a court order. (ECF No. 153). The parties also agreed that the merit-related fact discovery, as well as the additional deadlines, are adjourned pending this Court's decision on a motion for leave to file a proposed amended complaint or an anticipated motion to dismiss the proposed amended complaint. *Id.*

As such, the undue delay and prejudice consideration weigh in favor of granting the motion.

### c. Other Factors

Courts may also consider factors such as the lack of notice to the opposing party, bad faith by the moving party, and repeated failure to cure deficiencies by previous amendment. *Com. Money Ctr., Inc,* 508 F.3d at 346. None of these factors weighs against amendment here.

There is no evidence of bad faith, and Plaintiffs have not previously amended their complaint multiple times or failed to correct deficiencies after prior amendments. Moreover, this

Court finds Third Point Defendants had notice especially considering Plaintiffs requested production of documents from Third Point Defendants *after* they were dismissed from this case and the production of those documents brought the additional claims at issue. (ECF Nos. 130-1 at 3; 147-3 at 1).

### d. PSLRA

Third Point Defendants also argue that the Private Securities Litigation Reform Act (PSLRA) bars Plaintiffs' amendment. The Sixth Circuit considered Rule 15(a) in the context of the mandatory language of 15 U.S.C. § 78u-4(b)(3), requiring that a court dismiss a complaint if the pleading requirements are not met. *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 690-92 (6th Cir. 2003). "In light of those requirements" the court found that the PSLRA "restrict[s] the ability of plaintiffs to amend their complaint, and thus as limiting the scope of Rule 15(a) of the Federal Rules of Civil Procedure." The court noted it is especially significant when there is a finding that the amendment would be futile. *Id*.

Courts have relied on *Miller* for the proposition that "the purposes of the PSLRA would be frustrated if plaintiffs were allowed to repeatedly amend their complaints in order to meet the particularity requirements of the statute." *Id*. at 692; *Zwick Partners, LP v. Quorum Health Corp*., 394 F. Supp. 3d 804, 813 (M.D. Tenn. 2019); *Cole v. Harris*, No. 4:09CV1270, 2010 WL 11681664, at *6 (N.D. Ohio Jan. 4, 2019); *Walker v. L Brands, Inc*., No. 2:19-CV-3186, 2020 WL 6118467, at *18 (S.D. Ohio Oct. 16, 2020).

This Court does not find the PSLRA's purposes to be a barrier to amendment here. As explained above, the proposed amendment is not, on its face, futile, and there is no indication that granting leave to amend would frustrate the PSLRA's objectives by enabling Plaintiffs to engage

in serial amendments. Accordingly, the PSLRA does not preclude granting Plaintiffs' leave to amend at this stage.

Third Point Defendants contend that this motion is analogous to cases in which courts have barred amendment to reinstate previously dismissed parties based on documents obtained during discovery. (ECF No. 147-3 at 14). In support, they first cite *In re Bisys*. (*Id*.). As discussed above, *In re Bisys* is distinguishable. There, the court applied Rule 54(b) and found plaintiff failed to meet the standard and the alleged new evidence was insufficient. 496 F. Supp. 2d at 386-87. The court emphasized that reinstating claims against a previously dismissed defendant after the close of discovery would undermine "one of the central aims of the PSLRA," particularly because the plaintiff had "wait[ed] until all discovery in the rest of the case was completed and then add[ed] that defendant back into the case." *Id*. at 387. The court further noted that if plaintiffs could not initially plead fraud with specificity, the defendant should not have been named in the original complaint. *Id*.

Defendants also rely on *In re: Petrobras Sec. Litig*., No. 14-CV-9662 (JSR), 2016 WL 3144395, at *3 (S.D.N.Y. May 5, 2016), where the the motion for leave to amend was analyzed under Rule 16(b) because the motion was filed after the scheduling order's deadline for amendments. The court found that the "controlling inquiry is whether plaintiffs have shown 'good cause' for the Court to conclude that their amendments would not be futile. Despite having had the full benefit of discovery, plaintiffs have failed to do so, and so their request for leave to amend must be denied."

Both *In re Bisys* and *In re: Petrobras* are distinguishable. Here, Plaintiffs sought leave to amend before the close of discovery and within the deadline set by the Court's scheduling order.

Moreover, the motion satisfies the requirements of Rule 15(a)(2), and the proposed amendment addresses the previously identified pleading deficiencies using newly obtained evidence.

Accordingly, this Court finds granting Plaintiffs' motion for leave to amend warranted. There is no indication of undue delay, prejudice, or bad faith. The amendment is not barred by the PSLRA and serves to refine the pleadings based on material acquired during the course of litigation. As Rule 15(a)(2) directs that leave to amend should be freely given "when justice so requires," the Court grants Plaintiffs' motion.

### III.    CONCLUSION

For the foregoing reasons, Third Point Defendants' Motion to Intervene (ECF No. 147) is **GRANTED**. Plaintiffs' Motion for Leave to File [Proposed] First Amended Consolidated Complaint (ECF Nos. 130; 135) is also **GRANTED**. Accordingly, the Third Point Defendants— Daniel S. Loeb, Third Point LLC, and Third Point Ventures LLC—are hereby **REINSTATED**.


**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATE:   September 29, 2025**

21